**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| AJARON GAMBLE, #257354, )<br>)<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>WARDEN, LEE CORRECTIONAL )<br>INSTITUTION, )<br>)<br>Respondent. )<br>_____) | CIVIL ACTION NO. 3:07-4049-HFF-JRM<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Ajaron Gamble ("Gamble"), is an inmate with the South Carolina Department of Corrections, serving thirty (30) years imprisonment for armed robbery and a five (5) year concurrent sentence for possessing a firearm during a crime of violence. On December 17, 2007, Gamble filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C). Respondent filed a motion for summary judgment on May 2, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on May 12, 2008. Gamble filed responses to the Respondent's motion on May 19, 2008 and June 19, 2008.

**Background and Procedural History**

Gamble and his co-defendant, Kenneth Coxum ("Coxum") were convicted of robbing Abduel

1

Tupelo Humes ("Humes") in Humes' residence in Georgetown County on December 21, 1997. The case was called for trial on March 29, 1999. Charles David Barr, Esquire represented Gamble. After conviction, an Anders[1] brief was filed on Gamble's behalf by the South Carolina Office of Appellate Defense raising the following issue:

> Whether the trial judge erred in excluding evidence of specific conduct to impeach the alleged victim's credibility.

(App. 402).

The appeal was dismissed by the South Carolina Court of Appeal. *See* State v. Gamble, Unpublished Op. No. 2000-UP-727 (S.C.Ct.App. November 29, 2000) (App. 412).

Gamble filed an application for post-conviction relief ("PCR") on October 29, 2001. (App. 414). An evidentiary hearing was held on July 26, 2004. Gamble was represented by Toni Pennington, Esquire. The PCR court issued a written order of dismissal filed September 9, 2004. (App. 526). No appeal was filed.

A second PCR was filed on November 10, 2004, asserting that Gamble was denied an appeal following denial of the first PCR. (App. 533). The State did not oppose the second application and the Court issued an order granting Gamble the right to file his appeal. (App. 539). An Austin[2] petition for writ of certiorari was filed raising the following issues:

> 1. Was trial counsel ineffective for failing to impeach the alleged victim with his inconsistent statements from a prior recorded hearing?
>
> 2. Was trial counsel ineffective for failing to object to the improper bolstering of the alleged victim by non-expert police witnesses?

---

[1] Anders v. California, 386 U.S. 738 (1967).

[2] 409 S.E.2d 395 (S.C. 1991).

(Res.Mem., Ex. 7).

The South Carolina Supreme Court denied certiorari on the first question and granted certiorari as to the second question. (Res.Mem., Ex. 9). On November 5, 2007 the Supreme Court dismissed the petition as "improvidently granted". (Res.Mem., Ex. 10). The Remittitur was returned on November 21, 2007. On November 26, 2007 the Supreme Court received a motion for reconsideration which was denied as untimely. Gamble sent a second letter to the court which was construed as a motion for reinstatement. The motion was denied on January 9, 2008. (Res.Mem., Ex. 12).

## **Grounds for Relief**

In his present petition Gamble asserts that he is entitled to a writ of habeas corpus on the following grounds:

> **Ground One:** Trial counsel was ineffective for failure to impeach alleged victim with inconsistent statements from a prior recorded hearing.
>
> a. ...At the hearing, the alleged victim, Mr. Abdul Tupelo Humes, spoke on Applicant's behalf.... The court told Mr. Humes that he was "very generous... to have that point of view" and agreed to reduce Applicant's statement. Approximately 3 months later, Applicant's trial began. Applicant and Mr. Humes testified in contrast, respectively for the defense and prosecution. "The case turned on credibility." The state relied mostly on Mr. Humes' testimony....
>
> Mr. Humes waited three days before reporting the alleged robbery. The police took his initial statement five days later.... Trial counsel was fully aware of Mr. Humes prior inconsistent statement because he had represented Applicant at his bond hearing....
>
> The state relied mostly on Humes trial testimony. In contrast to his statement at bond hearing, Mr. Humes' trial testimony portrayed Applicant, rather than the co-defendant as the instigator and the primary perpetrator of the crimes against him....
>
> **Ground Two:** Trial counsel was ineffective for failure to object to improper bolstering of witness by police officers.
>
> a. In his cross-examination of Mr. Humes, the defense challenged details in his story but did not suggest that he recently fabricated it. Specifically, the co-defendant

counsel asked Mr. Humes to describe the force used on him at the time of the alleged robbery. While explaining, Mr. Humes testified as to a 44 magnum being pointed at his head is what forced him to depart with his jewelry.

....The state called a series of police officers after Mr. Humes' testimony. Corporal Kyle Watson testified that he took Mr. Humes' initial report on December 24, 1997. Corporal Watson testified that it was "not strange" for a victim to delay reporting a crime for three days.... The solicitor asked if Mr. Humes' initial report was "consistent" with his trial testimony.... Corporal Watson testified that Mr. Humes' testimony was consistent with his prior statements. Sargeant Robert Small testified that he interviewed Mr. Humes after Corporal Watson's interview. Sargeant Small testified that Mr. Humes prior statements were consistent with his trial testimony.

...The harm to petitioner's defense was magnified because the state presented three successive police witnesses, each of whom separately bolstered Mr. Humes by testifying about his prior consistent statements. Trial counsel was ineffective for not challenging the testimony on this basis.

## Discussion

### A. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations.

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United

States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399.  A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply.  "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."  Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted).  "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a).  Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling.  Equitable tolling applies only in "those race instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner]."  Harris, 209 F.3d at 330.  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing the doctrine does not apply.  Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.  Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004).  It is clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling.  United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).  Likewise, an attorney's mistake in calculating the filing date of the

6

AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

Gamble does not argue that he is entitled to equitable tolling. Instead he challenges Respondent's calculation of time. Gamble appears to agree with Respondent's calculation except as to when the statute of limitations began to run when the Remittitur was returned on November 21, 2007. (Res.Mem., Ex. 13). Gamble argues that the statute continued to be tolled because after the appeal was dismissed he filed *pro se* pleadings that were construed as a motion for reconsideration and a motion to reinstate the appeal. (Pet.Mem. Filed May 19, 2008, pp. 4-6). If Gamble is correct, his petition is timely.

> Rule 221, SCACR, states in part:
>
> **(a) Rehearing.** Petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court. A petition for rehearing shall be in accordance with Rule 224, and shall state with particularity the points supposed to have been overlooked or misapprehended by the court. No petition for rehearing shall be allowed from an order denying a petition for a writ of certiorari under Rule 226, SCACR.
>
> **(b) Remittitur**. The remittitur shall contain a copy of the judgment of the appellate court, shall be sealed with the seal and signed by the clerk of the court, and unless otherwise ordered by the court shall not be sent to the lower court or administrative tribunal until fifteen (15) days have elapsed (the day of filing being excluded) since the filing of the opinion, order, judgment, or decree of the court finally disposing of the appeal. If a petition for rehearing is received before the remittitur is sent, the remittitur shall not be sent pending disposition of the petition by the court. Where a petition for rehearing has been denied, the Court of Appeals shall not send the remittitur to the lower court or administrative tribunal until the time to petition for a writ of certiorari under Rule 226(c) has expired. If a petition for writ of certiorari is filed, the Court of Appeals shall not send the remittitur until notified that the petition has been denied. If the writ is granted by the Supreme Court, the Court of Appeals shall not send the remittitur.
>
> **(c) Rehearing of Motions**. The appellate court will not entertain petitions for rehearing on a motion or petition unless the action of the court on the motion or petition has the effect of dismissing or finally deciding a party's appeal.

7

The order of the South Carolina Supreme Court (Res.Mem., Ex. 12) shows that Gamble's first pleading which was construed as a motion for reinstatement was received after the Remittitur was returned. Thus it was not in compliance with the above rule. Likewise, Gamble's second pleading which was construed as a motion fo reinstatement was denied because it did not comply with Rule 221(b). The South Carolina Supreme Court held that after the Remittitur is properly returned to the Circuit Court, the Supreme Court lacks jurisdiction of the matter, and therefore, it can take no action. The undersigned concludes that since these pleadings were not properly filed, and the South Carolina Supreme Court had no jurisdiction after the Remittitur was returned on November 21, 2007, the statute of limitations was not tolled after that date. Therefore, the present petition is untimely.

### B. Ineffective Assistance of Trial Counsel.

Gamble asserts that his attorney was ineffective in two respects. The undersigned concludes that even if Gamble's claims are considered on the merits, he would not be entitled to relief.

Since Gamble filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

The United States Supreme Court has addressed procedure under § 2254(d). See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id</u>. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." <u>Id</u>. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney

9

performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

### 1. Impeachment.

Gamble asserts that his trial attorney was ineffective for failing to impeach the victim, Humes,

with prior inconsistent statements he made at Gamble's bond hearing. Both Humes, Gamble and Gamble's sister, Deborah Grant, testified at the PCR hearing on this issue. (App. 450). The PCR court reviewed the testimony and found the testimony of Humes to be credible and that of Gamble and his sister not credible. The PCR court found that Humes stated at the bond hearing that he believed Gamble was "heavily influenced" by Coxum, but that he did not say that the only thing he wanted was the return of his property. The PCR court concluded that Humes' trial testimony was not inconsistent with his prior statements.

There is a "strong presumption" that trial counsel's "conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Inadequate cross-examination will rarely be the basis for a finding of ineffective assistance of counsel. Courts recognize that "most attorneys make some mistakes during cross-examination." Hunt v. Nuth, 57 F.3d 1327, 1333, n.4 (4th Cir. 1995), *cert. denied*, 516 U.S. 1054 (1996). In Hunt, the prisoner presented experts at his PCR hearing to criticize trial counsel's cross-examination. The Fourth Circuit accepted the PCR court's finding that the experts' criticisms "constitute a grading of the quality of counsel's cross-examination. None of the suggested errors or omissions are of such a magnitude as to place the conduct outside of prevailing professional norms." Id.

### 2. Bolstering.

Gamble asserts that his attorney was ineffective for failure to object to the State's improper bolstering of the testimony of Humes by police officers. The officers testified at trial that it was not unusual for a victim to wait three days before reporting a crime and that Humes' trial testimony was consistent with pervious statements given to law enforcement. Gamble asserts that his attorney should have objected to this testimony.

This issue was briefly addressed by the PCR court. The Court found that Coxum's attorney objected to the testimony and the objection was overruled. Based on this fact, the PCR court found that Gamble's attorney committed no error. The undersigned agrees.

Gamble has not shown that the PCR court's rulings were "contrary to" or an "unreasonable application" of the Strickland rule.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted** and the petition **dismissed**, without an evidentiary hearing.



_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

December 11, 2008

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).